[L. A. No. 15437. In Bank.—February 29, 1936.]

JOSEPH B. TATLOW, Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

L. V. Meloy for Petitioner.

Philbrick McCoy for Respondent.

THOMPSON, J.—The petitioner was required by a notice dated August 7, 1934, to show cause why he should not be disciplined for unprofessional conduct. Two charges were contained in the notice. The first related to certain transactions between petitioner and a client with respect to protecting the interests of the latter in real property subject to a deed of trust given by the client to assure the support of her grandchild by her son. For reasons to be now stated it is unnecessary for us to detail the facts or the evidence bearing upon this count. The Board of Governors at its hearing after recommendation by the local administrative committee advised petitioner that so far as it was concerned he could confine himself to the second charge. And respondent's brief concedes, in effect, that its recommendation must stand or fall on the second charge. We have read the transcript and are inclined to the same view.

We may, therefore, turn to the charges contained in paragraph II of the notice. It is there stated, in effect, that petitioner was appointed guardian of the estate of Josef St. Clair Houston, an incompetent person, on August 15, 1927; that there came into his hands as such guardian certain sums of money which he had commingled with his own; that without any order of court therefor he had invested it, along with his own funds, with the Utah National Land Company in Utah, which concern was affiliated with the Pacific Investment Company, in which latter concern the petitioner was financially interested; that the investment was not profitable and that upon the final accounting, after removal of petitioner from the guardianship, the petitioner was found to be owing the estate $876, which has never been paid. It was also alleged that petitioner did not report the truth in the accounts prepared and submitted by him as guardian to the court for its approval. The local committee found the charges to be true

and recommended that petitioner be suspended for a period of three years, which findings and recommendation were adopted by the Board of Bar Governors. In response to a writ of review we have the record before us for the purpose of determining the sufficiency of the evidence to warrant disciplinary action.

The testimony reveals a most unusual manner of dealing with the funds of the ward. Shortly after appointment and about November, 1927, the sum of $1252 was received by the guardian from the veterans' bureau, as accrued compensation, which petitioner deposited in a bank in the name of the incompetent by himself as guardian. Thereafter he received $80 per month, most of which he used to pay the ward's expenses. At this time petitioner had some government bonds of about the value of $1200 which he put into a manila envelope marked "Property of the estate of Josef St. Clair Houston", and then put the envelope into the estate's folio. In 1930 the petitioner says he made his first report and simply declared that the funds were "held in cash and/or government bonds". Also about the same time he noticed that the bonds theretofore put into the envelope were to mature shortly, for which reason he substituted for them Liberty bonds with an accrued value of approximately $1234. And now we quote the exact language of petitioner: "That brought about a condition where I felt that I might deal with the money that was in the bank as I pleased, the same as if it was my own money, and to some extent I did that during that time. If I needed $500 or $100, whatever it was, in actual cash, I took it, because I had the Liberty bonds to that extent." Some time in 1930 or 1931 (the exact date is immaterial) he loaned the Utah National Land Company somewhere between $1,000 and $2,600. According to his testimony, he was not certain any of it was estate money, and that he first loaned nearly $1,000. According to the testimony of another witness, the petitioner said that in 1930 he sold $1400 worth of bonds and had taken $200 out of the guardianship account and $1,000 of his own money and loaned it all to the Pacific Investment Company, taking as security an assignment of a mortgage held by a Japanese, of whose name he was uncertain. This witness further testified that petitioner further admitted he had secured no title search, and had not recorded the assignment of the mortgage. The

petitioner testified that he definitely loaned some of the estate money in 1932, and took the assignment of the mortgage from the Pacific Investment Company, which mortgage had been assigned to it by the Utah Land Security Company. It is difficult to tell from the testimony whether there were one or two companies in the names of which were employed the words Utah and land, but it does appear that the Pacific Investment Company was affiliated in some way with it or them; that petitioner had been interested in the land company as a stockholder; and that he was president of the Utah National Land Company. When petitioner attempted to collect the sums he had thus loaned he was unsuccessful, whereupon he took an assignment from the investment company to the Utah National Land Company of a contract for $32,000 with a payment of $7,300 falling due March 10, 1932, "thinking that it could not be taken out without" his "signature and that" he "would have the present protection of that". However, the payment was not made, and up to the time of the hearing petitioner had taken no action to enforce collection of the sum he had loaned, because he thought it would be of no avail, nor had he at the time undertaken to foreclose the mortgage because of his belief that the property had no market value during that period of time. It further appeared from petitioner's testimony that all of the records with respect to the Utah transaction were in Utah, as well as the file of the estate, at the time of the hearing. They were not produced. Nor were any of the dealings thus related reported to or approved by the superior court. In fact, as already indicated, petitioner filed his second annual account on October 26, 1931, in which he reported he had on hand in cash or Liberty bonds $1158.05. On August 19, 1932, he filed a "second annual amended and supplemental accounting" covering the receipts and disbursements to February 1, 1932, in which he showed a balance on hand of $1417.63. Objections were filed by the administrator of veterans' affairs to this account on the grounds that petitioner had collected the sum of $480 prior to the filing of the account and subsequent to February 1, 1932, for which he had failed to account, and the report failed to show the manner in which the assets were distributed. By consent of the petitioner by letter, these objections were sustained. The hearing of the account was continued at least five times by the

court because of petitioner's failure to appear, and finally on March 7, 1933, a petition for his removal was filed. He was removed, and by a supplemental accounting he was found to owe the estate $1676.17 after an allowance to him of fees, of which sum he has only paid $800, leaving an indebtedness of $876.17 still due from him to his former ward's estate.

We ought also to note that petitioner's accounting for the $80 a month is unsatisfactory. Apparently the ward was allowed to do very much as he pleased with this sum, which was remitted to him whenever petitioner knew his location. It ought also to be said that petitioner has been engaged in the practice of the law, here and elsewhere, since 1898, so that he should be thoroughly familiar with its high standards of honesty and integrity.

As already stated, it has been recommended that petitioner be suspended for the period of three years, and we are of the opinion that the testimony is sufficient to warrant this recommendation. Money was entrusted to his care for an incompetent person. It was his duty to use every reasonable precaution for the preservation of the estate. Instead, he commingled it with his own funds and loaned the whole to a concern in which, directly or indirectly, he had a personal interest. Unable to realize on the sums thus put into a form in which they were not recoverable, he very obviously avoided a hearing of his accounts. We cannot draw an inference other than the one that, like others who make use of funds not belonging to them without authority, expecting to be able to make the fund whole when called upon, petitioner here was conscious of his own dereliction. The conduct of petitioner violates the fundamental rule of ethics —that of common honesty—without which the profession is worse than valueless in the place it holds in the administration of justice. The least discipline we can impose under the circumstances is to follow the recommendation.

It is ordered that petitioner be suspended from the practice of the law in this state for a period of three years, to commence thirty days after the filing of this order.

Shenk, J., Seawell, J., Curtis, J., Langdon, J., and Waste, C. J., concurred.

Rehearing denied.