[L. A. No. 18229.   In Bank.   May 22, 1942.]

MAC ARTHUR PROPP, Petitioner, v. THE STATE BAR
OF CALIFORNIA, Respondent.

Mac Arthur Propp, in pro. per., and William Roy Ives for Appellant.

Preston B. Plumb, Jr., and Arthur L. Syvertson for Respondent.

THE COURT.—This is a proceeding to review the recommendation of the Board of Governors of The State Bar that the petitioner be suspended for a period of six months.

The petitioner was charged with the violation of his oath and duty as an attorney at law within the meaning of section 6103, State Bar Act, and with the commission of acts involving moral turpitude within the meaning of section 6106.

The record shows that in September, 1938, the complaining witness, Mrs. Banks, was served with summons and complaint in a suit on a promissory note brought against her by the Universal Discount Company. She went to the petitioner for advice. It appeared that she had executed the note in favor of Dr. Smulson, a dentist, in payment for dental work which she claimed had been unsatisfactory. The dentist had transferred the note to the Universal Discount Company. The petitioner advised her to settle the action on the note and to file a separate suit for malpractice against Dr. Smulson. She agreed to this procedure. The petitioner settled the claim on the note and filed an action against Dr. Smulson for general damages in the sum of $1,500 and special damages in the sum of $175. An agreement was made between the petitioner and Mrs. Banks whereby the petitioner was to be paid a fee contingent on a successful outcome and on the basis of 50 per cent of any amount collected. Mrs. Banks advanced the court costs.

The malpractice action was filed in November, 1938. Dr. Smulson failed to appear and his default was entered on December 16, 1938. The petitioner informed Mrs. Banks that it would be necessary that some dentist testify as an expert on her behalf to establish her damages. She failed to obtain the services of an expert witness. In March, 1939, R. E. Matteson, chief advisory counsel of Kerrs Legal Research Bureau, discussed with the petitioner the possibility of obtaining a default judgment without the necessity of proving damages. The petitioner entered into an agreement with Matteson, who was not licensed to practice law in this state, a fact known to the petitioner, whereby Matteson agreed

to take the necessary legal steps to obtain a judgment and to have execution levied. The petitioner orally agreed that Matteson should receive for his services an interest in the judgment to the extent of $700.

In March, 1939, Matteson presented to the petitioner a memorandum of authorities to substantiate his theory. The petitioner did not examine the authorities but prepared a judgment and mailed it to the clerk of the court. In April, 1939, Matteson informed the petitioner that the clerk had refused to file the judgment. Matteson then suggested that they file the judgment with an affidavit of assignment prepared and sworn to by Matteson together with an unsigned writ of execution, and a check for $1 in payment of the clerk's fees for issuing the writ. Matteson was named and was acting in the capacity of assignee of the judgment. He took the papers for the purpose of filing them and of obtaining the issuance of the writ of execution. The papers were filed with the clerk but the filing did not constitute the entry of a judgment and execution was never issued thereon. Early in 1940 Matteson reported to the petitioner that he was having difficulty with the sheriff who refused to issue the writ of execution. They discussed the possibility of applying for the writ of mandate to compel the sheriff to issue the writ. The petitioner didn't see Matteson again until the latter part of 1940 when Matteson told him he had been ill and unable to work on the case. The petitioner did not attempt to locate Matteson again until February, 1941. Even then he did not see him and made no further attempts to have judgment entered in the action.

In the meantime Mrs. Banks had become anxious about her lawsuit. She tried many times to see the petitioner. On two occasions he informed her that he was attempting to have default judgment entered without producing evidence of damages. He told her that if his efforts did not succeed she would be required to furnish proof of the damages alleged in her complaint. Mrs. Banks had also received a letter from the petitioner stating that a judgment had been entered in the action. The petitioner testified that he did not dictate or sign the letter, but admitted that the letter came from his office.

The local committee and the Board of Governors found that the representation of the petitioner to Mrs. Banks that a judgment had been entered in the action was false and was

known by the petitioner to be false. The petitioner testified that he instructed his stenographer to write Mrs. Banks and tell her that default had been entered. He claims to be corroborated in his version of the incident by the fact that no initials appear at the bottom of the letter to indicate that he dictated it and that it was customary in his office for the stenographer to place appropriate initials on dictated letters. He therefore contends that the finding is not supported by the evidence.

An examination of the record discloses a course of conduct on the part of the petitioner which would justify this and other findings of the committee and the board. These findings are sufficient to support a recommendation for discipline and the petitioner has not met the burden of showing that the conclusion based thereon is unlawful or erroneous. The impropriety of following Matteson's advice needs no comment.

It is ordered that petitioner be suspended from the practice of law for a period of six months commencing thirty days after the filing of this order.

Petitioner's application for a rehearing was denied June 18, 1942.