[Sac. No. 5509. In Bank. Aug. 20, 1942.]

JAMES F. GAFFNEY, Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

Archibald M. Mull, Jr., Peter Mannino, Johnson & Curtright, P. H. Johnson and C. K. Curtright for Petitioner.

W. Eugene Craven and William A. Sitton for Respondent.

THE COURT.—This is a proceeding to review a recommendation of the Board of Governors of The State Bar that petitioner be disbarred from the practice of law.

By a notice to show cause issued in June, 1940, and later amended to conform to proof, petitioner was charged with the commission of acts involving moral turpitude and with the violation of his oath and duty as an attorney. Hearings were had before a local administrative committee of The State Bar at which the complaining client, his wife and others testified. Petitioner, who was represented by counsel, testified in his defense and called several character witnesses, all of whom testified to his prior good reputation for truth, honesty and integrity. The committee found that the petitioner had made false and fraudulent representations for the purpose of deceiving J. I. Lowthian, his client; that by reason of such false representations he had received and improperly converted to his own use $1,050 of the client's money; and that for the purpose of concealing his misconduct he had failed to prosecute an action instituted on behalf of Lowthian. The committee concluded therefrom that petitioner was guilty of acts involving moral turpitude and dishonesty within the meaning of section 6106, State Bar Act, and of the commission of a misdemeanor within the meaning of section 6128, subdivision b, of said act. Two members of the committee recommended that petitioner be disbarred while the third member recommended suspension for three years. The Board of Governors adopted the committee's findings and has recommended that petitioner be disbarred, two members dissenting.

Lowthian, as the complaining witness, testified that on May 2, 1935, he called at petitioner's office to ascertain whether he had a cause of action for slander based on certain statements made to and about him by a Mrs. Williams, proprietress of a hospital where his stepdaughter was confined as a maternity case. Petitioner, after hearing the circumstances, informed Lowthian that he had a good case and agreed to take it on a 40 per cent contingent fee basis, nothing being said about costs. On the following day petitioner

suggested that a detective be employed at $50 a day for the purpose of obtaining additional evidence. A check for $50, covering one day's detective work, was given to petitioner. On May 6, 1935, Lowthian called at petitioner's office to get a progress report and was told by petitioner that it would be well to hire the detective for a few additional days, whereupon petitioner was given a check for $100 to cover additional detective service. Approximately two weeks later, petitioner came to Lowthian's home and stated that the first check was a little blurred and that in attempting to "make it better" he had "made it worse" and had therefore brought it back for Lowthian to make out another. Petitioner then stated that it would be necessary to put up a $500 bond and that a cash bond would result in quicker action. Lowthian accordingly gave petitioner a check for $550 — $500 to be used as a cash bond and $50 to replace the first "blurred" check for the detective's service. A few days later, petitioner represented to Lowthian that the woman detective he had hired was working on the case. Early in June, 1935, petitioner represented that a few additional days of detective work were essential, whereupon Lowthian gave him a check for $150 to cover the same. Two days later, a similar representation and request by petitioner brought forth another check for $150 from Lowthian. Thus, between May 3 and June 7, 1935, petitioner, according to Lowthian's testimony, had collected from him $450 for detective services and $500 for a cash bond.

During the last six months of the year 1935, Lowthian called at petitioner's office every few days to express his anxiety for a court hearing of his case. Some time in September petitioner told Lowthian that the judge was on vacation and that he did not want the case to come up until that particular judge returned. Later in the same month, petitioner, in response to Lowthian's inquiry, represented that it was difficult to get the case on the calendar and that it would not be heard until the end of October.

Early in December, 1935, petitioner advised Lowthian that it also would be well to sue the hospital and that a bond of $150 was essential. Upon Lowthian's reply that he was short of money, petitioner offered to advance $50 thereof, whereupon Lowthian gave him a check for $100 to be used as a cash bond in the proposed hospital case. Thereafter many

conversations were had between attorney and client as to the condition of the case, petitioner repeatedly advancing varying excuses for delaying the action.

When Lowthian first employed petitioner early in May, 1935, the slander action was to be based on a statement made by Mrs. Williams to Lowthian, within the hearing of others in which she called him a "scoundrel" who had never paid his bills. Petitioner prepared a complaint based thereon, but in June, before it was filed and after petitioner already had received $950 from Lowthian for the purposes above mentioned, petitioner was informed that a second statement had been made by Mrs. Williams of and concerning Lowthian in which she had indicated that he was the father of his stepdaughter's child. Petitioner testified that he then believed that the relationship was that of father and daughter rather than stepfather and stepdaughter. Upon learning of the second statement by Mrs. Williams, petitioner destroyed the complaint originally drafted and prepared a second one, in two counts, based upon the two statements. The complaint so prepared by petitioner in June, 1935, was not filed by him, however, until April 30, 1936, just prior to the running of the statute of limitations. The summons was not served until August 18, 1938, and then only after Lowthian had called upon the district attorney and the latter had telephoned to petitioner and informed him of such fact. Lowthian went from the district attorney's office to petitioner's office and stated that he desired to talk with the woman detective. Petitioner then referred to the detective as a man, and said that he had died.

A demurrer to the slander complaint was filed in August, 1938. No hearing was had thereon, petitioner conceding a weakness in the complaint and agreeing to prepare an amended complaint. Petitioner prepared such amended complaint, but it was never signed, served or filed, and the action is still pending.

The foregoing narrative is taken principally from the testimony of Lowthian, the client. He was corroborated in all essential particulars by the testimony of his wife who was present at several of the meetings with petitioner. In opposition to their showing, petitioner testified that the $500 delivered to him on May 20, 1935, was not to be deposited as a cash bond but was to be held by him as security for the bond required to be filed in the action, and that all other

moneys ($550) delivered to him were in payment of fees and costs. He stated that he had taken the case on a 40 per cent contingent fee contract but was to receive $500 as a "retainer," which sum was to be later deduced from his percentage in the event his share upon recovery exceeded that amount. Lowthian, he stated, also was to advance all costs. It would appear unusual that the terms of such a contract were not reduced to writing. Petitioner denied that he had discussed with Lowthian the hiring of a detective, and admitted that none was ever employed. He further denied suggesting the filing of an action against the hospital. In an effort to explain his delay in filing the complaint for a period of approximately ten months, petitioner testified that his client entertained some doubt as to the defendant's financial condition and her ability to respond in damages. Such explanation hardly comports with the admitted money advancement made by Lowthian prior to filing of the complaint. A litigant in the financial position of Lowthian and entertaining serious doubt as to his adversary's financial status would hardly be inclined to make a preliminary advancement or expenditure of $1,050, as was here done, and then request delaying prosecution. Also without compelling force is petitioner's explanation that he withheld service of summons in the slander action until August, 1938, more than two years after filing of the complaint, because he believed from Lowthian's conduct that the latter did not desire to have the action prosecuted until the statute of limitations had run against any criminal charge that possibly might be filed against him (Lowthian) growing out of his stepdaughter's condition. It is difficult to believe that service of summons was delayed for approximately two years in order to prevent any criminal charge being filed against Lowthian when the matter which underlay the slander suit, and which would have constituted the basis for any such criminal charge, had been fully publicized in the newspapers upon the filing of the complaint for slander more than two years earlier. It is questionable, too, that Lowthian fearing a criminal prosecution, as stated by petitioner, would have invited the same by filing a civil complaint which might have had the effect of exposing any criminal responsibility on his part. Moreover, accepting petitioner's explanation, it is difficult to justify his conduct in preparing and filing a slander complaint on behalf of Lowthian based on statements which, if true, as

petitioner now indicates he suspected might have been so, would constitute a complete defense to such slander action. Petitioner admits that at no time did he discuss with his client that he entertained a suspicion of the client's criminal responsibility.

As to the $500 delivered to him for the bond in the latter part of May, 1935, petitioner testified that he placed the money, as security for such bond, in an envelope which he kept in his safe from May, 1935, until a few days after March 27, 1940, the date of the preliminary hearing in this disciplinary proceeding, at which time, he stated, he deposited it in a trust account with a bank in order to be in a position to draw a check thereon if required. In rebuttal, it was shown by the bank records that a deposit was made by petitioner on May 31, 1940, of $518, made up of $20 in cash and a check drawn on another bank in the sum of $498.

Other discrepancies and weaknesses appear throughout petitioner's testimony. His excuses and explanations for his misconduct are not convincing. Contrary to his contention, petitioner was not deprived of any right in making his defense. Every opportunity was extended to him to present any defense he might have to the charges. He was present in person and was represented by counsel. ▆ The amendment of the order to show cause to conform to proof was proper. (*Woodard* v. *State Bar*, 16 Cal. [2d] 755, 757 [108 P. (2d) 407].) ▆ Examination of the record satisfies us that the preponderance of substantial evidence supports the findings as made by the local committee and adopted by the Board of Governors. Petitioner has not met the burden of showing that the findings and the conclusions based thereon are erroneous or unlawful. (*Ring* v. *State Bar*, 218 Cal. 747, 751 [24 P. (2d) 821] ; *Aydelotte* v. *State Bar*, 209 Cal. 737, 740 [290 Pac. 41] ; *Propp* v. *State Bar*, *ante*, p. 387 [125 P. (2d) 825].)

It is ordered that petitioner be disbarred from the practice of law, effective thirty days after the filing of this order.

Petitioner's application for a rehearing was denied September 14, 1942.