[S. F. No. 16782.   In Bank.   Apr. 22, 1943.]

CEDRIC W. PETERSEN, Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

Cedric W. Petersen, in pro. per., for Petitioner.

Carl W. Wynkoop for Respondent.

THE COURT.—The petitioner was charged with violations of his oath and duties as an attorney and of the commission of acts involving moral turpitude and dishonesty. (Secs. 6067, 6068, 6103, 6106, State Bar Act.) Notice was served on him on October 25, 1939. Protracted hearings extending over a period of nearly two years resulted in findings and a recommendation by the Board of Governors that the petitioner be disbarred. The matter is now before us on an application to review the findings and recommendation.

The petitioner is a native of Oakland, California, and is about fifty-two years of age. He was admitted to practice law in this state on December 13, 1913. Two prior proceedings terminated in disciplinary action. On August 27, 1929, he was suspended for one year on a showing that he had withheld and appropriated to his own use funds entrusted to him by a client. (*In re Petersen,* 208 Cal. 42 [280 P. 124].) In September, 1938, he was again called to account on a similar charge which resulted in an order on August 14, 1940, suspending him for one year (*Petersen* v. *State Bar,* 16 Cal.2d 57 [104 P.2d 769].)

The events leading to the present charges and recommendation may be summarized as follows: Early in 1939 the petitioner was employed by Peter Steinkellner to refinance the business of Peter Steinkellner & Co., Inc., a California corporation which was in financial difficulties. He received $125 to cover the costs and fees involved in the reorganization, but claims of creditors were to be met from funds obtained in the refinancing. He revised the articles of incorporation, caused a stockholders meeting to be held, and took the articles into his custody for the purpose of filing the same, but when he learned that the corporation had failed to pay its franchise taxes, and that the sum necessary to reinstate its franchise was about the amount deposited with him for costs of reorganization, he did not file the papers. Thereafter he caused the Steinkellners to execute a note for $1,021.24 secured by a second deed of trust on their home in Marin County. Creditors' claims of $350 and $150 were authorized by Steinkellner to be paid out of the escrowed funds. The balance was turned over to the petitioner to apply to purposes stated. From that balance $150 was paid as a discount, $50 as a brokerage fee, and $290.64 to petitioner "on account." Petitioner also requested and received from Peter Steinkellner, Jr., the sum of $75 which he represented was needed to enable the company to meet the claims of creditors. Only one of the creditors, Pacific Gas & Electric Co., received from petitioner the payment of its claim which was in the sum of $14.62. The petitioner conducted some of the foregoing transactions through two companies, Investors Guaranty Corporation, and Associated Security Holders, Inc., of which he was president and in which he held controlling interests. Those companies kept no separate books of account, the work necessary to keep them going was done

by the petitioner, and they obviously were mere dummies through which reorganization and refinancing could be conducted by him.

On May 4, 1939, the petitioner procured the signatures of the Steinkellners to a letter which they had not read, purporting to authorize the petitioner to apply the balance of the proceeds from the second trust deed and note to the indebtedness of the company "including attorney fees." He testified that subsequently Steinkellner orally authorized him to apply all the remaining funds to the payment of his fees for legal services. This was denied by Steinkellner. On August 15, 1939, upon the petitioner's recommendation, the corporation filed bankruptcy proceedings. Schedules prepared by the petitioner and signed by the Steinkellners, also without having been read by them, did not list the moneys turned over to the petitioner. Upon Steinkellner's informing the petitioner that he had no funds "other than the money you have," the petitioner advised him to take the pauper's oath in the bankruptcy proceeding. The petitioner applied $75 of the funds received by him to "bankruptcy fee." The foregoing services of the petitioner or his corporations were performed within four months of the commencement of the bankruptcy proceeding.

The petitioner contends that the evidence does not support the conclusion that he was guilty of the violations charged; also that his conduct does not merit disbarment. He seeks to justify the charges of legal fees by contending that services performed by him covered a period of seven months and included also services in connection with the threatened closing of the Steinkellner factory, threatened bad check charges against the company and Steinkellner personally, in composing differences among the stockholders, in cooling the animosities of 71 creditors, in preventing the ousting of the company from the rented factory premises, and services in relation to attachment, labor and tax cases. Petitioner contends that he received but $403.82 on account and was forced to forego any further compensation. He urges that the local administrative committee stipulated that the fee charged was reasonable, and later reversed itself. Examination of the record does not support him. It discloses that the committee did not stipulate that the services performed by the petitioner were worth the sums retained by him. It stipulated

only that if the petitioner performed the services which were assumed in a hypothetical question, such services would be worth $430 or more. That stipulation was made to save the time which would have been consumed in the examination of expert witnesses to be produced by the petitioner.

The findings are fully supported by the record. They include a finding that evidence in support of petitioner's authority to retain the funds as payment on account of fees for legal services was unsatisfactory, and that the evidence of reasonableness was questionable. In one instance petitioner attempted to justify a charge of $305 in a matter involving a claim of $160, and a $50 charge for a police court matter in which he merely obtained a continuance.

█ The petitioner contends that he did not undertake to refinance the Steinkellner corporation in his capacity as attorney at law. He contends that the financing was undertaken through the offices of Associated Securities Holders, Inc., and that the note was discounted by Investors Guaranty Corporation. Assuming that he was acting in a dual capacity, the petitioner was nevertheless obliged to comply with the required standard of justice, honesty and good morals. (*Jacobs* v. *State Bar,* 219 Cal. 59 [25 P.2d 401].) He attempts to excuse the failure to include the moneys received by him in the bankruptcy schedules because, so he claims, they were moneys received from Steinkellner personally, and not from the Steinkellner corporation. Nevertheless, the legal services listed by the petitioner, and to the payment whereof he applied the funds received, for the most part, were services purportedly rendered on behalf of the corporation.

The petitioner argues in effect that this court should believe that the truth lies in the inferences drawn by the petitioner from his own testimony. He urges that Steinkellner was not worthy of belief. The record, however, discloses that the petitioner has not met the burden of showing that the findings of the board are erroneous or unsupported by the evidence.

█ There is no merit in the further contention that the petitioner was prevented from having a fair hearing before the local committee for the reason that one of its three members retired because of disqualification, and the remaining two conducted the proceedings without the appointment of a third member. Rule 7 of the Rules of Procedure of The State Bar provides that unless otherwise ordered by the

board a majority of a committee constitutes a quorum for the transaction of business. There was no disagreement between the acting members, and its appears that hearings were conducted fairly.

█ The petitioner also contends that his rights were prejudicially affected by the fact that but one member of the Board of Governors examined the record before the local committee and that the other members merely cast their concurring vote. A somewhat similar contention was rejected in *Shaeffer* v. *State Bar*, 220 Cal. 681 [32 P.2d 140].

█ The petitioner states that he ceased practicing law on September 1, 1940; that on January 3, 1942, he became an inactive member of The State Bar; and that on January 15, 1942, he offered to resign from the practice of the law "without prejudice." He maintains that he is happy in his present employment which has been since December 7, 1941, the "organization and re-organization of civilian business and financial affairs necessary in the defense and war program." In this connection, and on a motion to include additional documents and letters in respect to his resignation proposal, it is shown that the board refused to accept the resignation unless it was tendered "with prejudice." The filing of further documents is unnecessary. They would not assist the court nor benefit the petitioner. An attorney is not entitled to resign as of right during the pendency of disciplinary proceedings. Whether he is entitled to resign is a question primarily for the board to determine. It has not been shown that the board abused its discretion in rejecting the proposal to resign "without prejudice." Here the petitioner, after he had been suspended for one act of dishonesty, and while he was under investigation for another which terminated in a second suspension, committed still further acts of a similar nature. Those facts, together with the other facts disclosed by the record, fully justified the action and recommendation of the board.

It is ordered that the petitioner Cedric W. Petersen be and he is hereby disbarred from the practice of law in this state and his name is stricken from the roll of attorneys of the State of California, this order to be effective thirty days from the filing of this decision.