[L. A. No. 16972. In Bank.—March 24, 1939.]

GEORGE A. GLOVER, Petitioner, v. THE STATE BAR, Respondent.

George A. Glover, *in pro. per.*, for Petitioner.

Philbrick McCoy for Respondent.

WASTE, C. J.—Three charges of professional misconduct involving moral turpitude were filed with the respondent State Bar against the petitioner, an attorney at law. At the conclusion of its hearings, only one of which petitioner attended in person, the local administrative committee filed its report with the board of governors wherein it recommended that petitioner be disbarred from the practice of the law. The board, in turn, held a hearing and has similarly recommended disbarment of the petitioner.

In his petition to review such recommendation, the petitioner merely complains of the refusal of the board of governors to grant a continuance when the matter was before

that body. When this was pointed out in the brief of The State Bar and reference made to the fact that ''petitioner does not question the sufficiency of the evidence to sustain the findings of fact adopted by the board'', petitioner in his reply brief stated that he ''does earnestly and seriously question the sufficiency of the alleged evidence . . . ''. However, he has since made no effort to point out any deficiency in the evidence or findings, satisfying himself with the statement that he ''does not desire to occupy the time of this . . . court in discussing the alleged evidence, until such time as the record is sufficient and complete and all material facts bearing on the charges are before this court''. The refusal to grant the requested continuance before the board of governors underlies this statement.

An examination of the entire record convinces us that petitioner had ample opportunity to develop ''all material facts bearing on the charges''. Three hearings were held before the local administrative committee at which the several charges against petitioner were fully developed. Though personally served, petitioner failed to file an answer to the charges against him and he found it convenient to attend but one of the three hearings in person. At the first and third hearing he was represented by an office associate who, by reason of petitioner's attitude in the matter, was not entirely clear as to his authority or status in the proceeding. At the conclusion of the second hearing, which petitioner attended in person, he stated that he had no further evidence which he desired to produce in the so-called ''Rust matter''. His office associate appeared at the third and final hearing and stated that petitioner declared it to be immaterial to him whether the hearing was held or continued. It was held on May 3, 1938, and at the conclusion thereof, petitioner's representative was informed that the committee would hold the whole matter open for a week ''with the understanding that [petitioner] may have an opportunity to come in and offer any evidence he may have''. One week later, or on May 10th, the matter was submitted after petitioner's associate had indicated that petitioner did not desire to offer any further evidence and would not again appear without subpoena. Under date of July 22, 1938, petitioner was informed by letter of the report of the committee, a copy of which was enclosed. He was also informed of his right

to file a statement in opposition to such report and of his right to appear before the board for further hearing on August 19, 1938. On July 28th, petitioner sought by telegram to procure a continuance of the hearing before the board "on account of involved nature of cases and number of persons concerned and summer vacations seem impossible to properly prepare for hearing". Petitioner was immediately informed that his request for a continuance would have to be presented to the board at its scheduled meeting and that he should be prepared to proceed in the event the request was denied. Other telegrams and letters were exchanged on the subject. When the board met on August 19th as noticed, petitioner failed to appear and likewise failed to offer or file any statement in opposition to the report of the committee. A continuance was denied and the board heard and determined the proceeding in petitioner's absence. This chronological statement of the case speaks for itself. It points irrefutably to the conclusion that petitioner at all times was afforded full opportunity to offer any defense he might have to the several charges pending against him. He did not seriously avail himself of this opportunity but, on the contrary, appears to be procrastinating. His contention that he was improperly denied a continuance and an opportunity to be heard lacks merit. As stated in *Shaeffer* v. *State* Bar, 220 Cal. 681 [32 Pac. (2d) 140], "the practice . . . requires that the attorney present evidence available to him which he deems favorable to himself, to the local committee and the board, where such evidence may appropriately be received, and he may not neglect or withhold his activities in that respect and then successfully demand in his petition for review either that such evidence may properly be considered by this court or that he is entitled to another hearing in order to have it considered by the appropriate body." (See, also, *Tapley* v. *State Bar*, 8 Cal. (2d) 167, 170, 171 [64 Pac. (2d) 404].)

Inasmuch as petitioner fails to point out any deficiencies in the evidence or findings, we do not intend to here narrate in detail the charges against him. Examination of the record definitely indicates that the charges were fully established by the evidence and that the punishment recommended therefor is proper. In the so-called "Rust Matter" it appears that on October 25, 1937, petitioner received on

behalf of his client a cashier's check in the sum of $1995, by way of settlement of a claim. From that time until February 21, 1938, a period of 117 days, petitioner failed to notify his client of the receipt of such money. On the latter date, he informed his client thereof and requested the client to call at his office. When the client called, someone in the office delivered to him a check in the amount of $1950, drawn on "Trust Account #7" and signed by petitioner. The check was dishonored when presented for payment for at none of the pertinent times did petitioner have sufficient funds in the account to cover the check. In fact, a copy of the bank statement introduced in evidence discloses that between February 1 and February 21, 1938, the account varied from $3.50 to a high of $62.50 and to a low on the latter date of ten cents. Complaint was thereupon made by the client to The State Bar as a result of which $200 was paid to the client and petitioner agreed to pay $100 a month until the obligation was discharged. During the committee hearings petitioner made one payment of $100, leaving a balance still owing of $1650.

In the "Abraham Matter" petitioner unsuccessfully represented a client on a counterfeiting charge. He was paid a stipulated fee. Thereafter it was agreed between the parties that petitioner should be paid an additional amount of $500 to cover proceedings intended to establish the client's insanity or, failing in this, for an effort on his part to secure a reduction of the client's sentence from 12 years to 3 years, or less. It was also agreed that $400 of this sum was to be returned by petitioner should he be unsuccessful. The record fails to disclose any effort by petitioner to accomplish the desired result. Upon demand, he promised to repay the $400 as originally agreed. Several days after a complaint was lodged with The State Bar petitioner, through his office associate, repaid $100 of this sum.

The "Bautovich Matter" presents a situation where on November 20, 1937, petitioner received $400 from his client which he was to pay over to her estranged husband under a property settlement agreement, said sum to be paid in discharge of her note held by the husband. Counsel for the husband delivered all papers upon which payment of the money was conditioned. However, repeated requests to and demands upon petitioner for the payment of the money

proved unavailing. Complaint was made to The State Bar and on March 29, 1938, the date set for hearing of such complaint, petitioner delivered to adversary counsel his check on "Trust Account #7" in the sum of $377.50, an acceptable deduction having been made from the original amount due. Upon presentment, the check was dishonored for insufficient funds. Subsequently, the husband sued petitioner's client on her note and on April 16, 1938, the client paid $413 in discharge of the note and costs, petitioner on the same day having repaid her.

The record thus discloses that on three distinct occasions petitioner misappropriated money entrusted to him by clients, and in two instances when called on to account, executed and delivered two checks on an account in which there were insufficient funds. His acts and conduct show moral turpitude and a disregard of the duties and obligations owed by an attorney to his client. Such conduct merits the punishment recommended. (*Maggart* v. *State Bar*, 7 Cal. (2d) 495 [61 Pac. (2d) 451]; *Mills* v. *State Bar*, 6 Cal. (2d) 565, 567 [58 Pac. (2d) 1273].)

It is therefore ordered that petitioner, George A. Glover, be disbarred from the practice of law in this state and that his name be stricken from the roll of attorneys, effective thirty days after the filing hereof.

Shenk, J., Curtis, J., Seawell, J., Edmonds, J., Houser, J., and Langdon, J., concurred.