[S. F. No. 19367.   In Bank.   Mar. 27, 1956.]

GEO. C. W. EGAN, Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

Geo. C. W. Egan, in pro. per., for Petitioner.

Garrett H. Elmore for Respondent.

THE COURT.—This is a proceeding to review a recommendation of the Board of Governors of The State Bar that petitioner be disbarred from the practice of law.

Petitioner* was employed by Austin Olsen in January 1951 to collect damages for injuries allegedly suffered by Olsen and his wife as the result of an accident. A short time later those from whom the damages were sought agreed to pay $750 at the rate of $40 per month (later reduced to $20) and in the following two years paid petitioner $485 under the agreement. Petitioner did not promptly advise Mr. Olsen when payments were made and several times, in response to inquiries made by Mrs. Olsen, made incorrect statements concerning receipt of the payments. This was done with intent to deceive and mislead, and Mrs. Olsen was deceived and misled thereby.

Except for two payments aggregating $45 made to the Olsens in 1952, petitioner retained and converted to his own use the balance of the sum collected, and rendered no account-

*Petitioner is approximately 68 years of age and was admitted to practice law in this state on February 23, 1910.

ing to the Olsens until April 1953 after Mrs. Olsen complained to The State Bar.

## QUESTIONS

■ *First*: *Did the evidence sustain the findings of culpability on the part of petitioner?*

*Yes.* The record discloses that the transaction in question originated in 1951. Mrs. Rosalie Olsen, wife of Austin Kelly Olsen, sustained neck injuries on January 4, 1951, while riding in an automobile registered in the name of her husband. Mr. Olsen also suffered some injuries in the accident.

The Olsens employed petitioner to represent them in connection with their claim for damages, and on April 1, 1951, petitioner obtained an agreement executed by Agnes Rogers and Chatmon Hamp Adam whereby they agreed to pay at petitioner's office the sum of $750 in cash at the rate of $40 per month commencing April 27, 1951, until the whole sum of $750 should be paid. In the two-year period April 1951 to March 1953 payments on this obligation were made or collected by petitioner or his office with considerable regularity. The payments, with one exception, were $20 rather than $40 after February 27, 1952.

As of April 4, 1953, petitioner admittedly had received collections of $485. On February 28, 1952, he paid $20 by check to Mr. Olsen; on June 6, 1952, petitioner paid $25 by check to Mrs. Olsen. No further payments were made until April 1953 when petitioner rendered an accounting dated April 4, 1953, by letter to Mrs. Olsen. Shortly thereafter he offered and later transmitted a cashier's check for $278.34 in settlement of the account to date. The check payable to Austin K. and Rosalie Olsen, was transmitted under date of April 10, 1953, accompanied by a letter explaining the deduction of one third of $485 as petitioner's fee, the general status of the matter, and a request for instructions as to whether petitioner should continue with the collection.

The accounting and settlement were accepted by Mrs. Olsen after the death of her husband, which took place April 11, 1953.

Preceding the accounting and settlement, a complaint had been made to The State Bar and, Mrs. Olsen testified, various efforts had been made to reach petitioner without effect. The record discloses ample evidence that all but two or three installments of money which petitioner received for the Olsens were converted to his own personal use and that it was his

intention to substitute his personal obligation for the monies thus collected belonging to his client. The evidence further discloses that he neglected for a long period to report receipt of the funds of his clients and did not make a prompt accounting to them of their funds which were in his possession. It also appears that even though he had received funds belonging to the Olsens he falsely stated that no monies had been in fact received by him.

Clearly the foregoing facts support the findings of fact of the Board of Bar Governors. Such findings disclose that petitioner violated rule 9 of the Rules of Professional Conduct, which reads: "A member of the State Bar shall not commingle the money or other property of a client with his own; and he shall promptly report to the client the receipt by him of all money and other property belonging to such client." (33 Cal.2d 30.)

■ *Second: Did the Board of Governors properly deny petitioner's oral motion to reopen the matter before them?*

*Yes.* Petitioner did not comply with rule 39.1, Rules of Procedure of The State Bar, which requires that a motion for reopening be accompanied by affidavit stating the substance of "any new evidence . . . and the reasons why such evidence was not presented to the local administrative committee." In addition, the motion was properly denied because petitioner had in fact testified to his version of the arrangement which he had with Mr. Olsen (since deceased). He had testified: "We will let the matter go along. If we are lucky enough to get any money out of these people, then I'll hold a reasonable amount out to cover costs and whatever incidental expenses there might be. That was the way the matter was left." As grounds of the motion to reopen, petitioner stated to the Board of Governors that he had an agreement that he could "reserve" the funds until the full $750 was collected. This was the only new matter, and it was in conflict with petitioner's previous testimony. Clearly, no prejudice resulted to him from the denial of the motion.

■ *Third: Was the examiner biased and prejudiced against petitioner because after petitioner's services were terminated he represented Mrs. Olsen in making collection of the balance of the obligation due her?*

*No.* The record discloses that the examiner was not employed by Mrs. Olsen and did not represent her until after the hearings before the trial committee had been excluded.

█ *Fourth: Was the degree of discipline appropriate under the circumstances?*

*Yes.* The Board of Governors took into consideration the past record of petitioner. This included (1) public reproval on November 19, 1937; (2) suspension for one year ordered by this court following recommendation of disbarment (*Egan* v. *State Bar,* 10 Cal.2d 458 [75 P.2d 67] [January 12, 1938]); and (3) public reproval on June 23, 1939.

This court in *Narlian* v. *State Bar,* 21 Cal.2d 876, at page 887 [136 P.2d 553], thus correctly states the rule: ''It is appropriate to take into consideration this previous record in determining what penalty should be imposed for the misconduct involved in the present proceeding (citing numerous cases).''

The evidence discloses that petitioner over a long period of time had failed to meet the high standards demanded of members of the legal profession and that on a previous occasion he had been disciplined for misappropriating funds of a client. (*Egan* v. *State Bar,* 10 Cal.2d 458 [75 P.2d 67].) Clearly, with such a record, his conduct in the instant case was most reprehensible and disbarment as recommended by The State Board of Bar Governors was an appropriate penalty. (See *Kennedy* v. *State Bar,* 13 Cal.2d 236, 240 [88 P.2d 920]; *Hennessy* v. *State Bar,* 18 Cal.2d 685, 687 [2] [117 P.2d 326].)

It is ordered that Geo. C. W. Egan be disbarred and that his name be stricken from the roll of attorneys of this state, the order to become effective 30 days after the filing of this opinion.