[L.A. No. 29768. In Bank. Jan. 26, 1971.]

HARRY ALKOW, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

926

---

**COUNSEL**

Harry Alkow, in pro. per., for Petitioner.

F. LaMar Forshee, Herbert M. Rosenthal and Ronald W. Stovitz for Respondent.

## OPINION

**THE COURT.**—Harry Alkow was charged in six counts with the violation of his oath and duties as an attorney at law (Bus. & Prof. Code, §§ 6103, 6067, 6068), and the commission of acts involving moral turpitude, dishonesty, and corruption (Bus. & Prof. Code, § 6106). After a hearing, which Alkow failed to attend, the local administrative committee found him guilty as charged on five counts (dismissing the sixth) and recommended that he be disbarred. The disciplinary board, upon further hearing and review, sustained the committee's findings and recommended disbarment.

Alkow is now 65 years of age, was admitted to practice in 1927, and has twice before been suspended from practice. (*Alkow* v. *State Bar,* 38 Cal.2d 257 [239 P.2d 871]; *In re Alkow,* 64 Cal.2d 838 [51 Cal.Rptr. 912, 415 P.2d 800, 21 A.L.R.3d 882].) He contends in this proceeding (1) that he was denied due process of law because he was not permitted to augment the record at oral argument before the board, and (2) that the evidence is insufficient to sustain the board's findings. Neither contention is sound.

On April 10, 1969, after conducting a preliminary investigation pursuant to rule 21 of the Rules of Procedure of the State Bar of California (adopted pursuant to Bus. & Prof. Code, § 6086), Local Administrative Committee No. Three for Orange County issued to Alkow a notice to show cause on August 8, 1969, why he should not be disciplined for the professional misconduct charged in six counts. He acknowledged service of the notice on May 16, 1969. The notice advised him of his duty to serve a written answer to the charges against him within 10 days of service, pursuant to specified rules of procedure (rules 28, 31, 32, 33).

He did not file an answer within 10 days. Rule 32 provides that the respondent to a notice to show cause is not entitled to further notice of his right to file an answer or appear before the committee. Nevertheless, on June 27, 1969, a reminder letter was sent by registered mail. Alkow signed an acknowledgment of receipt of such letter. At no time, however, did he file an answer to the charges against him.

Rule 32 further provides that a respondent's failure to answer and/or failure to appear shall not be cause for delaying a hearing. The committee shall proceed with the hearing and is not to take the respondent's failure to answer or appear as evidence of the truth of the matters charged. Pursuant to rule 32, the hearing was held on August 8, 1969. Alkow did not appear. The five witnesses who appeared testified as hereinafter set forth.

COUNT ONE: Mrs. Dorothea Banks testified that she employed Alkow

as an attorney to enforce the provisions of a contract for the sale of her business, Dairy Mart, against allegedly defaulting purchasers named Johnson. Mrs. Banks paid Alkow $200 to cover the costs of filing a suit, and received a receipt dated September 11, 1967. Alkow stated that he would take action right away. Mrs. Banks turned over to Alkow a lease and other documents.

In September, when the Johnsons moved out, Alkow asked for another $150, claiming that the case was already in court and he would have to change the papers. Mrs. Alkow paid him the $150 and received a receipt dated September 28, 1967.

Mrs. Banks called Alkow many times and arranged various meetings. Alkow frequently did not appear.

On or about Christmas 1967, Mrs. Banks asked Alkow for the number of the case and Alkow stated that he would have to look it up. Mrs. Banks then asked her brother to check to see if the case was filed, and he said that it had not. Alkow claimed that the case had been filed in Costa Mesa and would soon be heard. Mrs. Banks did not sign a complaint in the action nor did she receive notice of a hearing date. She never saw a copy of a complaint or any correspondence in relation to the Johnson matter. (In fact no complaint was ever filed.)

Approximately one year from her first contact with Alkow, Mrs. Banks, on two occasions, requested the return of the documents delivered to him. Alkow returned the lease only. Mrs. Banks attempted to see Alkow on several occasions and was unable to secure the return of the remaining documents, including the original contract and bill of sale which she claims are necessary to enforce her rights under the contract. At approximately this time Alkow agreed in writing to return to Mrs. Banks $175 at $20 a week, and gave her $20. He further agreed to continue with the case "and see if they have blood or water." Mrs. Banks received no further payment and tried repeatedly, in person and by telephone, to collect. Alkow failed to keep various appointments with her.

COUNT TWO: Count Two was dismissed because the complaining witness failed to appear.

COUNT THREE: Larry Wilson testified that his wife, Barbara Ann Wilson, engaged Alkow to obtain a divorce. Mrs. Wilson gave Alkow a check for $100, dated May 22, 1965, to pay for initial attorney fees. She wished to leave California soon. Alkow later notified Mrs. Wilson that he had set a date for hearing, and Mrs. Wilson scheduled her departure accordingly.

On or about June 7, 1965, Alkow informed the Wilsons that he could not go into court at the time set because of an error he had made in filing the papers. Mr. Wilson told Alkow that they could not go ahead because Mrs. Wilson was leaving. Alkow said there would be no problem because he could represent Mr. Wilson and file a cross-complaint against Mrs. Wilson after she left. Mr. Wilson stated that he did not like the arrangement and asked for the return of the money paid by Mrs. Wilson. However, Mr. Wilson finally agreed to let Alkow handle his case. He gave Alkow a check dated June 7, 1965, in the amount of $150 and received a receipt with the same date as payment of costs in full.

On June 28, 1965, Alkow filed an action for divorce on behalf of Mrs. Wilson, who thereafter left California.

On or about July 29, 1965, Alkow informed Mr. Wilson that he could not represent Mr. Wilson because he had filed the original action for Mrs. Wilson. He represented that the cross-complaint was filed, but that Mr. Wilson had to pay him an additional $25 to get another attorney to appear in court for Mr. Wilson. Mr. Wilson gave Alkow a check for $25 dated July 29, 1965. No cross-complaint was in fact ever filed.

For over a year thereafter Mr. Wilson contacted Alkow on numerous occasions to determine whether a court date had been set. Alkow said that he "would get right on it" and that he was taking care of the matter. No court date was ever set.

James W. O'Brien, an investigator in the proceeding, testified that he had examined superior court file No. 137738, and found therein a complaint in a divorce action entitled Barbara Wilson v. Larry James Wilson filed June 28, 1965, but found no evidence of return of service, a cross-complaint or any other action.

In April 1967, Mr. Wilson brought a small claims action against Alkow and received a judgment for $200 plus costs. He received no payment. In October 1967, Mr. Wilson sued on the judgment against Alkow, and Alkow agreed to pay Mr. Wilson $20 every two weeks. Mr. Wilson received $20 in cash from Alkow that month. The next payment he received was a check from Alkow for $20 dated May 2, 1968, which check was cashed the same day but returned from the bank because the account had been closed.

COUNT FOUR: George Buxton testified that on July 25, 1967, he retained Harry Alkow to prosecute an appeal in a case that he had lost against the Orange County Hospital in the Superior Court of the County of Orange (4 Civ. 8994). Alkow agreed to file the brief for $150 and to handle the appeal itself for an additional $150 or $200. Buxton agreed to pay Alkow

$75 of the $150 before the brief was due, for preliminary papers, and did so. Buxton also paid for the cost of the transcript and personally delivered it to Alkow.

Alkow stated that he was taking care of the appeal. On or about November 6, 1967, however, Buxton received notification from the Court of Appeal that a $50 filing fee was due. Mr. Buxton paid the fee on or about November 13, 1967.

Buxton received by mail a notice dated December 21, 1967, from the Court of Appeal, Fourth Appellate District, that unless he filed an opening brief within 30 days, the appeal would be dismissed under rule 17(a), California Rules of Court. Buxton immediately contacted Alkow and informed him of the 30-day notice. Alkow stated that he should not worry, that he had already started on the brief, and that things were in good shape.

On or about January 15, 1968, Buxton again talked to Alkow. Alkow stated that he had not done anything further, but that he would have it all done, it being only a matter of a few minutes more work.

On January 18, 1968, Buxton again called Alkow and again was told that the brief was not ready. Buxton wanted to take the brief to the court personally, but Alkow stated that it would not be necessary. Buxton then told Alkow that he was going to check the status of the case in San Bernardino, which he did. At the time of these events Alkow was still acting as Buxton's attorney.

Buxton spoke with the clerk of the Court of Appeal, who told him that he should request an extension of time. Buxton and a legal secretary made out the request and filed for an extension on the last day.

When the extension was granted, Buxton called Alkow and told him of this fact and stated that they had six more weeks; Alkow said he would get the work done.

Buxton talked to Alkow several times subsequent to the extension. Alkow said that he was preparing the brief. On Febraury 29, 1968, Buxton attempted to contact Alkow by going to his hotel, but did not see him. Buxton himself subsequently filed for and received four or five further extensions of time. Buxton never received a brief and knew of no work done by Alkow. No brief was in fact filed.

On May 15, 1968, Buxton talked to Alkow about a refund of the $150 he had paid Alkow. Alkow stated that he did not have the money but would pay Buxton back. Buxton filed an action and received a default judgment from small claims court in the amount of $150 plus costs. Alkow has made only five payments to Buxton in the amount of $15 each.

Buxton received a communication from the law firm of Ball & Hart that further requests for extension would be contested. He wrote a letter to the Court of Appeal, dated July 5, 1968, advising the court that he would be unable to continue due to lack of financial support.

COUNT FIVE: Mrs. Charles Bennett testified that on or about August 31, 1966, she retained Alkow to represent her and her husband in a claim for damages resulting from personal injuries to their minor son. Mrs. Bennett turned over to Alkow a check from an insurance company in the amount of approximately $42 made out to Mrs. Bennett and her son, and also gave Alkow a personal check for $50.

Alkow said that he would file suit. Between September 1966 and March 1967, Mrs. Bennett talked to Alkow approximately six times in person and approximately a dozen times by telephone. Alkow had Mrs. Bennett sign a "pink slip" that Alkow was to file in court. Alkow stated that the case was filed. On various occasions Alkow told Mrs. Bennett that the case was coming up, giving specific dates, but always called her to say that the hearing had been cancelled. On the last time that Alkow informed her of a cancellation, in February 1967, Mrs. Bennett called a Mr. Hillman, who stated that Alkow had been suspended from practice in California, although Hillman did not tell her the dates of the suspension. (Alkow was in fact suspended for six months beginning September 9, 1966.)

After March 1967, Alkow told Mrs. Bennett that the case was again coming up and made an appointment to see Mrs. Bennett at his hotel. Mrs. Bennett and her son appeared for the appointment but Alkow himself made no appearance.

Mrs. Bennett investigated the status of the case and found that no complaint had been filed by Alkow in this matter.

Mrs. Bennett then employed another attorney, and Alkow turned over papers and documents to him, but did not return the $42 check. Mrs. Bennett asked for the return of the $50. On three or four occasions Alkow agreed to return the money, but failed to do so. Mrs. Bennett received a small claims court judgment against Alkow in the amount of $50 plus costs, which has not been paid.

COUNT SIX: Andrea Saldivar testified that on or about March 26, 1968, she employed Alkow to institute and prosecute immigration proceedings on behalf of her brother, Gerardo Alonzo Garcia, a Mexican national. Alkow said the fee would be $500. On March 26, Mrs. Saldivar gave Alkow $250 on account and received a receipt. On April 9, 1968, she gave Alkow $150 and received a receipt; and on May 24, 1968, she gave Alkow $25 on account of the $100 balance and received a receipt.

Alkow met Mrs. Saldivar's brother once at Alkow's office, receiving certain documents from him. Neither at that time nor at any other time did Alkow show Mrs. Saldivar or her brother any papers prepared in the matter. Mrs. Saldivar thereafter asked Alkow to return the money she had paid him and the documents in his possession. Alkow told her that a named Tijuana attorney was handling the case and had the documents. He showed her no letters that were allegedly written to the attorney. Nor, did any attorney contact Mrs. Saldivar's brother. To date neither the $425 nor the documents necessary to the brother's immigration have been returned to Mrs. Salvidar or her brother.

COMMITTEE ACTION: On August 19, 1969, having heard the testimony summarized above, Local Administrative Committee No. Three adopted findings of fact in substantial conformity therewith and recommended that Alkow be disbarred.

Sometime thereafter Alkow advised the committee that his failure to appear was due to a calendaring error on his part. Though not required by the Rules of Procedure, the committee responded by granting him a formal opportunity to reopen the matter by filing application to do so within 10 days. He acknowledged receipt of this letter on October 30, 1969, but failed to communicate further with the local committee.

In a letter dated December 15, 1969, the Disciplinary Board of the State Bar informed Alkow that the local committee recommended that he be disbarred. Enclosed were copies of the testimony heard and facts found by the committee. The letter advised petitioner that he had 20 days in which to file a statement in opposition to the report, pursuant to rule 39, 10 days in which to apply for the presentation of additional evidence or a hearing de novo pursuant to rule 39.1, and the right to appear personally or by counsel (or both) before the board for oral argument pursuant to rule 40. Copies of all these rules were enclosed with the letter. Alkow was notified that his case was scheduled to be heard on January 10, 1970. Alkow did not reply to this letter in any way.

On January 2, 1970, the board evidently sent Alkow a reminder that his hearing was scheduled for January 10. In a letter received by the board on January 8, 1970, Alkow alleged that he either did not receive or did not understand the letter of December 15, claiming that he had been ill for several weeks and had received hospital treatment. He submitted a prescription form, dated January 7, 1970, which states, in its entirety: "Patient has hypertension and enlarged heart; should be at bed rest for 10-14 days." There is no corroboration for his claim that he was ill in the latter half of December, nor for his repeated general claim that he missed the hearing before the local committee due to a calendaring error.

In his letter of January 8, he asked for an extension of time of two weeks to enable him "to send in statement of facts or make an appearance in the above matter, which declarant [is] greatly desirous to do, under Rule 40 of the State Bar rules, possibly also Rules 39 and 39.1, whichever would be applicable to the declarant's appearance before this Disciplinary Board."

Although the board then granted an extension of time, setting the hearing for March 14, 1970 (over two months later), and despite his obvious knowledge of which State Bar rules applied to him, Alkow never applied to present additional evidence before the board.

At the hearing, on March 14, 1970, he appeared in person. He asked permission to introduce evidence and testify on his own behalf. Because he had not complied with rule 39.1, which sets forth the procedural requisites of introducing new evidence or requesting a hearing de novo, his motion to submit additional evidence was denied. The disciplinary board also noted that he had failed to submit additional evidence to the local board when given the opportunity to do so.

After hearing petitioner's arguments based on the record before it, the board unanimously adopted the findings of the local committee, with minor changes, and unanimously recommended that petitioner be disbarred.

We first consider whether the disciplinary board's refusal to allow petitioner to augment the record at oral argument denied him due process of law. It did not.

We have previously held, where a respondent to a State Bar proceeding had failed to comply with rule 39.1, that the disciplinary board was justified in denying his oral motion to present additional evidence to the board. (*Egan* v. *State Bar,* 46 Cal.2d 370, 373 [294 P.2d 949].) In Alkow's case the board had before it a long history of silence, inattention, and unsupported excuses for failure to participate in these proceedings.

He was duly notified of the charges against him and of the hearing before the local committee. He failed to appear or in any way communicate with the committee until after the hearing. At his own request he was generously given an opportunity to move to reopen the hearing before the local committee, yet failed to so move. The disciplinary board notified petitioner of its scheduled hearing of his case, and expressly called his attention to rules 39, 39.1, and 40, governing the presentation of evidence and argument before the disciplinary board. He failed to respond to such notice until two days before the hearing, at that time producing inadequate proof of illness. He asked for a two-week extension. The board gave him two extra months to prepare his case. Prior to the hearing he did not apply to present additional evidence or for a hearing de novo.

Under the circumstances the board was fully justified in denying Alkow's motion to reopen the matter. (*Barreiro* v. *State Bar,* 2 Cal.3d 912, 925 [88 Cal.Rptr. 192, 471 P.2d 992]; *Egan* v. *State Bar, supra,* 46 Cal.2d 370, 373; *Glover* v. *State Bar,* 13 Cal.2d 229, 232 [88 P.2d 922].)

■ He contends, however, that rule 40 must be considered independently from rule 39.1. He further contends that pursuant to rule 40 (regardless of compliance with rule 39.1) the board was required to grant him permission to submit additional evidence and testify in his own behalf, and that the board's failure to do so denied him due process of law. We cannot agree that rules 40 and 39.1 should be so construed.

Rules 38 through 42(a), taken together, govern review of disciplinary cases by the board of governors or their disciplinary board. Rule 38 provides that the respondent is to be advised of the conclusions and recommendations of the local committee and provided with a copy of rules 39, 39.1, and 40. Rule 39 gives the respondent an opportunity to file a statement in opposition (or support) of the findings of the committee, rule 39.1 gives the respondent an expressly independent opportunity to submit new evidence or request a hearing de novo upon compliance with certain procedural requirements, and rule 40 gives him "an opportunity to be heard orally before the board, . . ." Rule 40 grants no independent right to present evidence. These rules are complementary, not independent. Oral argument in such proceedings enables the advocate to argue the effect of the record, to impress upon the tribunal the merits, if any, of his position, and to answer the doubts and questions posed by the board. Rule 40 in no way purports to grant a respondent a hearing de novo before the board; any hearing de novo must be sought pursuant to rule 39.1.

■ We next consider petitioner's contention that the findings of the local committee, affirmed with minor modifications by the disciplinary board, are not supported by the evidence. It is our conclusion that the findings are amply supported.

■ Findings of fact made by a local administrative committee or the board of governors are not binding upon this court, which itself passes upon the sufficiency and weight of the evidence. (*Moore* v. *State Bar,* 62 Cal.2d 74, 79 [41 Cal.Rptr. 161, 396 P.2d 577]; *Alkow* v. *State Bar,* 38 Cal.2d 257, 258 [239 P.2d 871].) ■ But the burden is upon one seeking a review of the recommendation of the disciplinary board to show that its findings are not supported by the evidence. (*Simmons* v. *State Bar,* 2 Cal.3d 719, 728-729 [87 Cal.Rptr. 368, 470 P.2d 352]; *Eschwig* v. *State Bar,* 1 Cal.3d 8, 15 [81 Cal.Rptr. 352, 459 P.2d 904]; *Moore* v. *State Bar, supra,* 62 Cal.2d 74, 79; *Alkow* v. *State Bar, supra,* 38 Cal.2d 257, 258.) ■ Alkow has not met this burden.

The local committee found, for example, that Alkow told Mrs. Banks that he had filed a complaint in her behalf when he had not in fact filed any document for her. He responds that there was no use in filing an action because the defendant had filed a petition in bankruptcy. Yet Alkow expressly admits that he misled Mrs. Banks and that he told her that an action had been filed.

The local committee also found that he had repeatedly represented to George Buxton that he would prosecute the latter's appeal, that Buxton was himself forced to obtain extensions of time from the court because Alkow failed to write and file his brief, and that he has refunded only half of the $150 he received from Buxton for work he never did. Alkow does not dispute that he agreed to represent Buxton and that he never filed a brief. He claims that it was he who obtained extensions of time, and seems proud of the fact that, over three years after he agreed to do work for Buxton, he has returned $75 of the $150 paid him.

Alkow makes unsupported allegations and declarations regarding the other findings of the local committee. He alleges, for example, that he referred the cases of the Bennetts and Mrs. Saldivar to other attorneys, yet has failed throughout to support these allegations in any way. Far from sustaining his burden of showing that the findings are not supported by the evidence, petitioner's unsupported claims and apparent lack of comprehension regarding his duties to his clients only emphasize his inattention to duty and disregard for his clients' interests.

The record discloses a pattern of misconduct: petitioner demanded legal fees in advance, in return for agreeing to perform certain services; petitioner failed to perform those services, but continually represented to his clients that he was diligently working on their respective cases; and petitioner habitually retained the legal fees paid him without doing work to earn such fees.

█ Willful failure to perform legal services for which the attorney has been retained in itself warrants disciplinary action, constituting a breach of the good faith and fiduciary duty owed by the attorney to his client. (*Clancy* v. *State Bar,* 71 Cal.2d 140, 146 [77 Cal.Rptr. 657, 454 P.2d 329]; *Simmons* v. *State Bar, supra,* 2 Cal.3d 719, 729.) █ Even if petitioner's pattern of nonperformance is the result of negligence rather than willful behavior, his deceit of his clients—willful representations of completed performance when none was actually completed—is reprehensible. (*McKinney* v. *State Bar,* 62 Cal.2d 194, 196-197 [41 Cal.Rptr. 665, 397 P.2d 425].)

█ An attorney owes the highest duty of fidelity to his clients. (*Clancy*

v. *State Bar, supra,* 71 Cal.2d 140, 146; *Magee* v. *State Bar,* 58 Cal.2d 423, 430-431 [24 Cal.Rptr. 839, 374 P.2d 807].) He must be "entitled to be recommended to the public as worthy of trust." (*Simmons* v. *State Bar, supra,* 2 Cal.3d 719, 731.) ■■ Alkow has been previously suspended for periods of three years (*Alkow* v. *State Bar, supra,* 38 Cal.2d 257), and six months (*In re Alkow,* 64 Cal.2d 838 [51 Cal.Rptr. 912, 415 P.2d 800, 21 A.L.R.3d 882]). His first suspension, in particular, resulted from misconduct similar to that now found: accepting fees without performing work, deceiving clients as to the status of their cases, and issuing insufficiently funded checks. "[I]t is apparent that the discipline then administered did not succeed in imparting to him an understanding of the duties of an attorney to his clients and to the public." (*Bruns* v. *State Bar,* 18 Cal.2d 667, 673 [117 P.2d 327].)

■■ Our concern lies in protecting the public's right to representation by attorneys who are worthy of trust and who fulfill the professional standards required of them. ■■ We cannot in good conscience continue to allow petitioner to practice law.

It is therefore ordered that petitioner be disbarred from the practice of law in this state and that his name be stricken from the roll of attorneys effective 30 days from the filing of the court's opinion.

Petitioner's application for a rehearing was denied February 24, 1971.