[Civ. No. 45049. First Dist., Div. One. Mar. 20, 1979.]

JAMES YORN, Petitioner, v.
THE SUPERIOR COURT OF THE CITY AND COUNTY OF
SAN FRANCISCO, Respondent;
LOUISE HESEMEYER, Real Party in Interest.

## COUNSEL

Charles O. Morgan, Jr., for Petitioner.

No appearance for Respondent.

Cooper, White & Cooper, Mark L. Tuft, and Denis O. Sutro for Real Party in Interest.

## OPINION

**RACANELLI, P. J.**—We issued an alternative writ of mandamus in order to examine the questions presented by the pretrial order disqualifying petitioner's privately retained counsel in a criminal proceeding. We

conclude that neither jurisdictional excess nor abuse of discretion is manifested as claimed. Accordingly, the relief requested is denied.[1]

*Facts*

The record discloses the following salient circumstances:

Petitioner Yorn and real party Hesemeyer are codefendants in a grand jury indictment charging them with crimes of conspiracy (Pen. Code, § 182), embezzlement (Pen. Code, § 504) and grand theft (Pen. Code, § 487, subd. 1); Yorn is additionally charged with fraudulently issuing worthless checks (Pen. Code, § 476a); the charges stem from a series of escrow transactions over a several months' period involving aggregate disbursements of $433,000 made to Yorn by Hesemeyer as local manager of National American Title Insurance Company (hereafter National). Hesemeyer filed a pretrial motion to disqualify Yorn's privately retained defense counsel, Charles O. Morgan, Jr., on grounds of a prior attorney-client relationship and conflict of interests. In her supporting declaration Hesemeyer alleged that: (1) Morgan has professionally represented and advised her in certain personal and business matters continuously since January 1976; (2) in the course of such attorney-client relationship, she has confided information germane to the pending charges; (3) during the same time interval, Morgan also provided legal advice to Hesemeyer and her employer, National, concerning some of the escrow transactions related to the criminal charges. A supporting declaration filed by Hesemeyer's present attorney substantiated Morgan's receipt of confidential information from Hesemeyer and further recited Morgan's offer to withdraw as Hesemeyer's counsel in related civil litigation on grounds of conflicting interests.[2]

In his opposing declaration, Morgan—while acknowledging a prior unrelated period of representation of Hesemeyer and National—concedes that on two occasions he advised Hesemeyer on escrow transactions

---

[1]The petition, denominated as one for certiorari, mandate, prohibition and habeas corpus, is treated substantively as a request for relief in mandamus as hereafter explained.

[2]The declaration of Mark L. Tuft, Esq., states that upon Morgan's proposal that the former undertake Hesemeyer's representation in certain civil litigation naming her, Yorn and National as defendants, he requested Morgan to withdraw as Yorn's counsel therein on grounds of "clear conflict" which Morgan agreed to do.

related to the charges and that he received confidential information from her which "could be germane to some of the charges . . . ."[3]

Following a hearing, the trial court granted Hesemeyer's motion to disqualify Morgan as Yorn's counsel and continued the matter two weeks to allow Yorn to retain new counsel. The instant proceedings ensued in the interim.

## Contentions

Yorn argues that the challenged order violates his constitutional right to be represented by counsel of his own choice and constituted an act in excess of jurisdiction. Contrawise, Hesemeyer asserts that the Sixth Amendment guarantee does not include the unqualified right to be represented by any particular attorney; that under the circumstances reflected, her codefendant's limited right to be represented by counsel of his own choosing must yield to the paramount concern to maintain inviolate the confidences obtained during the preexisting attorney-client relationship. For the reasons we explain, we find that assertion and its underlying premises to be valid.

## I

### Propriety of Extraordinary Review

We first consider the preliminary question whether the challenged order is subject to scrutiny by means of extraordinary review.

It is well established that a pretrial order substantially affecting a defendant's right to a fair trial in criminal proceedings may be appropriately reviewed by mandamus. (*Maine* v. *Superior Court* (1968) 68 Cal.2d 375, 379 [66 Cal.Rptr. 724, 438 P.2d 372].) Interlocutory orders affecting a defendant's constitutional right to counsel have been consistently treated as properly reviewable in mandamus proceedings. (*Harris* v. *Superior Court* (1977) 19 Cal.3d 786 [140 Cal.Rptr. 318, 567 P.2d 750]; *Drumgo* v. *Superior Court* (1973) 8 Cal.3d 930 [106 Cal.Rptr. 631, 506 P.2d 1007, 66 A.L.R.3d 984] [right to appointed counsel of defendant's choice]; *Magee* v. *Superior Court* (1973) 8 Cal.3d 949 [106 Cal.Rptr. 647, 506 P.2d 1023] [defendant's right to associate pro hac vice counsel]; *Smith* v. *Superior*

---

[3] In support of Yorn's countermotion for separate trials, Morgan further declared—inter alia—that his analysis of the charges revealed "conflicting defenses" possibly prejudicial to the interests of the codefendants. Apparently, the severance motion was denied.

*Court* (1968) 68 Cal.2d 547 [68 Cal.Rptr. 1, 440 P.2d 65] [power to remove appointed counsel]; *Ward* v. *Superior Court* (1977) 70 Cal.App.3d 23, 27, fn. 1 [138 Cal.Rptr. 532] [order disqualifying county counsel in civil litigation].) ■ In light of such precedent, we conclude that mandamus properly lies herein to review the order disqualifying Morgan as petitioner's retained counsel.

## II

### *Right to Chosen Counsel*

■ The constitutional right to the effective assistance of counsel embraces the right to retain counsel of one's own choice. (*People* v. *Holland* (1978) 23 Cal.3d 77, 86 [151 Cal.Rptr. 625, 588 P.2d 765]; *People* v. *Byoune* (1966) 65 Cal.2d 345, 348 [54 Cal.Rptr. 749, 420 P.2d 221]; accord *Chandler* v. *Fretag* (1954) 348 U.S. 3, 9 [99 L.Ed. 4, 9-10, 75 S.Ct. 1]; *Powell* v. *Alabama* (1932) 287 U.S. 45, 53 [77 L.Ed. 158, 162-163, 53 S.Ct. 55, 84 A.L.R. 527]; *People* v. *Douglas* (1964) 61 Cal.2d 430, 438 [38 Cal.Rptr. 884, 392 P.2d 964].) However, that particularized choice is not absolute (*People* v. *Crovedi* (1966) 65 Cal.2d 199, 207 [53 Cal.Rptr. 284, 417 P.2d 868]; *United States* v. *McMann* (2d Cir. 1967) 386 F.2d 611), and can be "constitutionally . . . forced to yield only when it will result in significant prejudice to the defendant himself or in a disruption of the orderly processes of justice unreasonable under the circumstances of the particular case." (*People* v. *Crovedi, supra,* at p. 208.)

■ Although some dispute is revealed in the conflicting declarations concerning the nature and extent of the past and present attorney-client relationship, the trial court's findings based upon such conflicting evidence are conclusive on appeal. (*Big Bear Mun. Water Dist.* v. *Superior Court* (1969) 269 Cal.App.2d 919, 927 [75 Cal.Rptr. 580]; *Jacuzzi* v. *Jacuzzi Bros., Inc.* (1963) 218 Cal.App.2d 24, 27-28 [32 Cal.Rptr. 188].) Such implied findings clearly demonstrate a classic confrontation between an accused's limited right to be represented by a particular attorney and that attorney's duty to preserve the confidentiality of, and to refrain from undertaking employment adverse to, his former (and, in some respects, current) client. (See Bus. & Prof. Code, § 6068, subd. (e); Rules Prof. Conduct, rule 4-101.)[4]

---

[1]Business and Professions Code section 6068, subdivision (e), imposes a duty on an attorney "To maintain inviolate the confidence, and at every peril to himself to preserve the secrets, of his client."

Rule 4-101 of the Rules of Professional Conduct of the State Bar of California provides

■ Few precepts are more firmly entrenched than that the fiduciary relationship between attorney and client is of the very highest character (*Alkow* v. *State Bar* (1971) 3 Cal.3d 924, 935 [92 Cal.Rptr. 278, 479 P.2d 638]; *Lee* v. *State Bar* (1970) 2 Cal.3d 927, 939 [88 Cal.Rptr. 361, 472 P.2d 449]; *Clancy* v. *State Bar* (1969) 71 Cal.2d 140, 146 [77 Cal.Rptr. 657, 454 P.2d 329]; *Chronicle Pub. Co.* v. *Superior Court* (1960) 54 Cal.2d 548, 567 [7 Cal.Rptr. 109, 354 P.2d 637]; *Tomblin* v. *Hill* (1929) 206 Cal. 689, 693-694 [275 P. 941]) and, even though terminated, forbids (1) any act which will injure the former client in matters involving such former representation or (2) use against the former client of any information acquired during such relationship. (*Wutchumna Water Co.* v. *Bailey* (1932) 216 Cal. 564 [15 P.2d 505].) ■ ■ Under the promulgated rules governing professional conduct, which apply in criminal and civil cases alike (*Uhl* v. *Municipal Court* (1974) 37 Cal.App.3d 526, 535-536 [112 Cal.Rptr. 478]), the ethical prohibition against acceptance of adverse employment involving prior confidential information includes *potential as well as actual use* of such previously acquired information. (*Galbraith* v. *The State Bar* (1933) 218 Cal. 329, 332-333 [23 P.2d 291].)

Rule 4-101 (formerly rule 5, Rules Prof. Conduct) is designed not only to prevent dishonest conduct but to avoid placing the honest practitioner "in a position where he may be required to choose between conflicting duties, or . . . attempt to reconcile conflicting interests, . . ." (*Earl Scheib, Inc.* v. *Superior Court* (1967) 253 Cal.App.2d 703, 706 [61 Cal.Rptr. 386] [citing *Anderson* v. *Eaton* (1930) 211 Cal. 113, 116 (293 P. 788)]; cf. *Goldstein* v. *Lees* (1975) 46 Cal.App.3d 614, 620 [120 Cal.Rptr. 253].) Pragmatically, its rationale is analogous to that underlying the right of separate counsel in certain multiple-defendant criminal cases to remove any possibility of potential compromise of tactical decisions due to divided or conflicting loyalties. (See *Glasser* v. *United States* (1942) 315 U.S. 60, 70 [86 L.Ed. 680, 699, 62 S.Ct. 457]; *People* v. *Douglas, supra,* 61 Cal.2d 430, 436, 438.)

■ The record herein demonstrates that Hesemeyer privately consulted with Morgan in seeking and obtaining his professional advice on certain matters directly related to the pending criminal charges. Not only has Morgan acknowledged receipt of such confidential information, and conceded its potential relevance to the charges and the likelihood of

as follows: "A member of the State Bar shall not accept employment adverse to a client or former client, without the informed and written consent of the client or former client, relating to a matter in reference to which he has obtained confidential information by reason of or in the course of his employment by such client or former client."

conflicting defenses, but it also appears that during the same time interval Morgan purported to render advice concerning a similar subject-matter area to the now-alleged *victim itself* (National). In light of such uncontroverted circumstances disclosing a clear conflict of interests, it is at least questionable whether Morgan was not obliged to *voluntarily withdraw* as counsel for Yorn. (See *Pennix* v. *Winton* (1943) 61 Cal.App.2d 761, 773 [143 P.2d 940, 145 P.2d 561]; Bus. & Prof. Code, § 6068, subd. (e); Rules Prof. Conduct, rules 2-111(B)(2), 4-101, 5-102(A), (B).) Viewing Morgan's plural relationship even under the most charitable perspective of minimally acceptable standards, such conduct is hardly calculated to inspire public trust in the " 'scrupulous administration of justice and in the integrity of the bar.' " (*Comden* v. *Superior Court* (1978) 20 Cal.3d 906, 915 [145 Cal.Rptr. 9, 576 P.2d 971].) To permit Morgan to remain as Yorn's retained counsel over objection of his former client would subvert the basic purpose of the relevant standards of professional responsibility (*id.,* at p. 915) and court the very real danger of a divided loyalty and resultant denial of a fair trial. (Cf. *People* v. *Superior Court (Greer)* (1977) 19 Cal.3d 255 [137 Cal.Rptr. 476, 561 P.2d 1164] [duty to recuse prosecutor on grounds of apparent conflict of interest].)

Notwithstanding, Yorn argues, relying on the holding in *United States* v. *Armedo-Sarmiento* (2d Cir. 1975) 524 F.2d 591, that his willingness to waive *his* right to have retained counsel free of conflicting interests would effectively accommodate the competing interests involved and should have been considered by the trial court in deference to his right of free choice. (See *People* v. *Crovedi, supra,* 65 Cal.2d 199, 207.) The argument suffers from inverted reasoning and the reliance seems totally misplaced.

In *Armedo-Sarmiento,* the order disqualifying the defendant's retained counsel was obtained *by the government* on grounds of counsel's earlier but unrelated representation of government *witnesses* who refused to waive any claim of privileged communication that might arise during cross-examination. In distinguishing a line of civil cases underscoring the court's equal responsibility to avoid conflict in situations endangering confidentiality and threatening to undermine the integrity of the bench and bar, that court concluded that the crucial presence of Sixth Amendment rights mandated the defendant's election to be represented by counsel of choice concurrent with a knowing waiver of any claim of prejudice based upon conflicting interests, including the right of the former clients-witnesses to invoke the claim of privilege during cross-examination. (*United States* v. *Armedo-Sarmiento, supra,* 524 F.2d 591, 592-593.)

However, in the case at bench it is the claim of privileged communications of a *codefendant* that is at stake and for whom arguably the protection of the professional rules precluding nonconsensual adverse employment is intended. Yorn's waiver of Morgan's conflicting interests can hardly be characterized as a "reasonable effort" calculated to safely accommodate Hesemeyer's right to confidentiality during trial proceedings. Unlike the special circumstances reflected in *Crovedi* (failure to grant trial continuance due to retained counsel's illness and appointment of substitute counsel constituted a denial of due process), Yorn's qualified right to be represented by counsel of choice is outweighed by significant countervailing considerations. Under such circumstances, to submit to Yorn's claim of unfettered choice of counsel would work an unnecessary but serious prejudice to the interests of his codefendant and unreasonably infringe upon her own right of due process.

Balancing Yorn's limited right to retain counsel of his own choice against his codefendant's right to a fair trial coupled with the paramount objective of maintaining public confidence in the impartiality of the courts and integrity of its professional bar, the former must yield " 'to considerations of ethics which run to the very integrity of our judicial process.' (*Hull* v. *Celanese Corporation* (2d Cir. 1975) 513 F.2d 568, 572.)" (*Comden* v. *Superior Court, supra,* 20 Cal.3d 906, 915.)

We conclude that the trial court did not exceed its jurisdiction nor otherwise abuse its discretion in ordering the disqualification of Yorn's retained counsel particularly where, as here, he was afforded a reasonable opportunity to retain other counsel of his choice.[5] (See *People* v. *Brady* (1969) 275 Cal.App.2d 984, 993 [80 Cal.Rptr. 418].)

The petition is denied and the alternative writ is discharged.

Elkington, J., and Newsom, J., concurred.

A petition for a rehearing was denied April 16, 1979, and petitioner's application for a hearing by the Supreme Court was denied May 17, 1979.

---

[5] Of course, we may justifiably assume that Yorn's present counsel is not the only member of the greater metropolitan bar qualified to capably represent him in the pending criminal proceedings. (See *Comden* v. *Superior Court, supra,* 20 Cal.3d 906, 915.)